**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALDEN ADAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2649** |
| **DANIEL EDWARDS, SHERIFF, ET AL.** | **SECTION "N"(3)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Alden Adams, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983 against the Tangipahoa Parish Sheriff's Office, Sheriff Daniel Edwards, Warden Stuart Murphy, Assistant Wardens Schirra Finn and Brandon Pinion, Head Nurse Alison Thornhill, and Nurses Bruce Oliver and Blaine Griffin. In this lawsuit, plaintiff alleged that he was denied adequate medical care while incarcerated at the Tangipahoa Parish Jail. In his amended complaint, he stated his claims as follows:

> On 10-14-14 and 10-28-14, I gave Nurse Blaine Griffin sick call forms to see the doctor. On 10-16-14 and 11-8-14, I gave Nurse Bruce Oliver sick call forms to see the doctor. It's going on three months and I haven't seen a physician yet. On 10-28-14, I sent a ARP to Asst. Warden S. Finn. On 10-31-14 I sent a ARP to Asst. Warden Brandon Pinion and on 11-10-14, I sent a ARP to Warden Stuart Murphy. I haven't heard from either of them concerning this matter.[1]

[1] Rec. Doc. 6, p. 5.

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[2] At that hearing, plaintiff testified that, while he was incarcerated at the Tangipahoa Parish Jail, he experienced a sharp pain running from his neck to his right elbow which a physician diagnosed as nerve damage. He said that he had been told that he needed an MRI, but he was never taken to the doctor. Plaintiff testified that defendants Bruce Oliver and Blaine Griffin collected his sick call requests, but they never arranged for any medical care whatsoever. Plaintiff also testified that he wrote grievances to Warden Stuart Murphy and Assistant Wardens Schirra Finn and Brandon Pinion, but they never responded to those grievances. Plaintiff stated that Alison Thornhill was the jail's head nurse, but she was never there. Lastly, plaintiff explained that he sued Sheriff Daniel Edwards because he is the head of the jail.[3]

The undersigned United States Magistrate Judge subsequently recommended that plaintiff's claims against the Tangipahoa Parish Sheriff's Office, Sheriff Daniel Edwards, Warden Stuart Murphy, Assistant Wardens Schirra Finn and Brandon Pinion, and Head Nurse Alison Thornhill be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be

---

[2] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

[3] At that Spears hearing, the Court also asked plaintiff about the relief he was seeking in this lawsuit. In both his original and amended complaints, the only form of relief he requested was a transfer to a facility operated by the Louisiana Department of Public Safety and Corrections. After filing this lawsuit, he was in fact transferred to such a facility. However, at the hearing, plaintiff also requested an award of monetary damages, and he indicated that he would be filing a second amended complaint requesting such damages. That second amended complaint has since been filed. Rec. Doc. 18.

granted.[4] The United States District Judge adopted that recommendation and dismissed the claims against those defendants.[5]

Accordingly, the only claims remaining are those asserted against Nurses Bruce Oliver and Blaine Griffin. Oliver and Griffin have now filed a motion arguing that the claims against them should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6] Plaintiff has filed a response in opposition to that motion,[7] and the defendants have filed a reply to that response.[8]

It is clear that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on

---

[4] Rec. Doc. 19.

[5] Rec. Doc. 20.

[6] Rec. Doc. 27.

[7] Rec. Doc. 32.

[8] Rec. Doc. 35.

its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). "Although Rule 12(b)(6) is a powerful tool to use in expediting the judicial process and excising court calendars of cases in which there are no judicially cognizable claims, it is a disfavored motion and is rarely granted." Clark v. Amoco Production Co., 794 F.2d 967, 970 (5th Cir. 1986); accord H.H. White, L.L.C. v. Hanover Insurance Co., 559 F. Supp. 2d 714, 715 (E.D. La. 2008) (Engelhardt, J.).

As an initial matter, the Court notes that the defendants argue that plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Federal courts have taken a strict approach to the exhaustion requirement. For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle,

534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," id. at 532. The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The United States Fifth Circuit Court of Appeals therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). Moreover, the Fifth Circuit emphatically held that the exhaustion requirement cannot be excused by a federal court, stating:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. We thus hold that Underwood [v. Wilson, 151 F.3d 292 (5th Cir. 1998),] has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added; footnote omitted).

However, despite the foregoing, it is also clear that exhaustion is an affirmative defense on which the defendants bear the burden of proof. See, e.g., Abbott v. Babin, 587 Fed. App'x 116, 118 (5th Cir. 2014) ("When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted."); Morgan v. Texas Department of Criminal Justice McConnell Unit, 537 Fed. App'x 502, 508 (5th Cir. 2013); Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). Of course, "it is easy work to establish

that dismissal is appropriate pursuant § 1997e(a) in the context of a properly supported motion for summary judgment under Rule 56 ...." Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *2 (E.D. La. Nov. 13, 2013). Here, however, the defendants did not file a motion for summary judgment.

Instead, the defendants opted to assert the defense in a Rule 12(b)(6) motion. That makes success far more difficult to achieve, due in large part to the fact that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). However, while difficult, it is not impossible to successfully assert an exhaustion defense in a Rule 12(b)(6) motion. For example, dismissal is warranted where a plaintiff *concedes* in his complaint that administrative remedies were in fact available and that he simply did not utilize and comply with them. See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007) (noting that a dismissal for failure to state a claim, predicated on a failure to exhaust, is appropriate "if the complaint itself makes clear that the prisoner failed to exhaust"). The defendants appear to argue that is the case here.

The undersigned disagrees. It is true that, in response to a question on the complaint as to whether he "exhausted or completed all steps in the [grievance] procedure, including appeals," plaintiff stated: "No. ... I never received a response to any of the 3 Administrative Remedy Procedures."[9] Moreover, it is clear that *if* a jail has a multi-step grievance procedure that expressly requires a prisoner to proceed to the next step when he does not receive a response at an earlier step, his claim is unexhausted if he fails to comply with that requirement. See, e.g., Smith v. St.

[9] Rec. Doc. 5, p. 3. He gave a similar response in his amended complaint. Rec. Doc. 6, p. 3.

Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 3010038, at *3 (E.D. La. Aug. 1, 2008). However, in this case, there is absolutely no evidence whatsoever before the Court establishing the provisions of the Tangiaphoa Parish Jail's grievance procedure, including whether it contains such a provision. Therefore, it simply cannot be said that dismissal based on a purported failure to exhaust is warranted. Accordingly, the undersigned declines to recommend dismissal based on exhaustion grounds.[10]

The defendants next argue that plaintiff has failed to state a claim upon which relief can be granted because, even if his allegations are accepted as true, they are insufficient to allege a federal violation. Again, the undersigned disagrees.

As noted, plaintiff has sued Nurses Bruce Oliver and Blaine Griffin because they allegedly collected his sick call requests but never arranged for *any* medical care for him. It is clear that an inmate's right to medical care under the United States Constitution is extremely limited. Nevertheless, regardless of whether he is a pretrial detainee or a convicted prisoner, an inmate's constitutional right to medical care is violated if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir.

---

[10] Of course, nothing herein would prevent the defendants from reasserting this defense in a properly supported motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

2006). In their motion, the defendants argue that plaintiff has failed to allege a serious medical need; however, they devote little discussion to that point. In any event, the undersigned finds otherwise. As noted, at the Spears hearing, petitioner testified under oath that he experienced sharp pain running from his neck to his right elbow; he further testified that a prior physician had diagnosed the pain as resulting from nerve damage and recommended an MRI. In some instances, persistent pain can constitute a serious medical need. Perez v. Anderson, 350 Fed. App'x 959, 962 (5th Cir. 2009); see also Thomas v. Carter, 593 Fed. App'x 338, 342 (5th Cir. 2014) ("[N]on-life-threatening injuries are a serious medical need where the injuries induced severe pain."). In light of that fact, as well as the fact that plaintiff's Spears hearing testimony must be considered, accepted as true, and viewed in the light most favorable to him for the purposes of the instant Rule 12(b)(6) motion, see Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996), the undersigned cannot say at this stage of the proceedings that plaintiff's medical needs were not sufficiently serious to state a claim.

The undersigned also cannot say that plaintiff has failed to properly allege that the defendants acted with deliberate indifference. As noted, plaintiff testified at the Spears hearing that Bruce Oliver and Blaine Griffin collected his sick call requests but never arranged for *any medical care whatsoever*. Clearly, ignoring sick-call requests complaining of pain can in some instances constitute deliberate indifference. Coleman v. Sweetin, 745 F.3d 756, 766 (5th Cir. 2014); accord Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (An inmate can establish deliberate indifference by showing that "officials refused to treat him, *ignored his complaints*, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." (quotation marks omitted;

emphasis added)). Again, accepting plaintiff's testimony as true and viewing it in the light most favorable to the him for the purposes of the instant Rule 12(b)(6) motion, the undersigned cannot say at this stage of the proceedings that plaintiff has failed to properly allege that the defendants acted with deliberate indifference.

This, of course, is not to say that plaintiff actually had a serious medical need or that the defendants did in fact act with deliberate indifference. Rather, the undersigned simply finds that plaintiff's allegations are sufficient to meet the minimal threshold necessary to survive a Rule 12(b)(6) motion.[11]

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motion to dismiss filed by Bruce Oliver and Blaine Griffin be **DENIED**.

---

[11] The undersigned notes that the defendants argue in their motion that plaintiff's medical records show that he was provided with medical care. Although the Court ordered production of the medical records, and although the records have been filed into this federal record at Rec. Doc. 17, the records were not attached to or referenced in the complaint. As a result, they are not properly considered with respect to a Rule 12(b)(6) motion. Cf. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings *if they are referred to in the plaintiff's complaint* and are central to her claim." (emphasis added)).

That said, the defendants are free to scour those same records and file a motion of summary judgment identifying those portions of the records which they believe demonstrate the absence of a genuine issue of material fact. See Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001). If they do so, plaintiff will then be given the opportunity to file a response in which he will be required "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[12]

New Orleans, Louisiana, this eighteenth day of August, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

[12] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.